### Job P. Marshall v. Nelson Freeman.

1.  CHECKS—*Loss by Delay in Presenting.*—As between the drawer and the holder of a check, the law is that, although the drawer has suffered some loss, less than the amount of the check, by the *laches* of the holder in respect to the time of its presentment. there may be a recovery of the difference between the amount of such loss and that of the check. The drawer is discharged only *pro tanto.*

2.  REMITTITUR—*Excess of Amount Due.*—Where the finding of a jury is in excess of the amount due, the entry of a *remittitur* cures the error.

**Memorandum.**—Assumpsit. Appeal from the Circuit Court of Fulton County; the Hon. JEFFERSON ORR, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The statement of facts is contained in the opinion of the court.

Marshall v. Freeman.

Appellant's Brief, Gray & Waggoner, Attorneys.

It is the duty of the holder of a check to present it during banking hours of the next day after he receives it. If this is not done, and a loss is occasioned by the subsequent insolvency of the drawee, the drawer is discharged. McDonald v. Mosher, 23 Ill. App. 211; Proctor v. Einstein, 20 Ill. App. 664; Marine & Fire Ins. Co. v. Tincher, 30 Ill. 403; 17 Am. State Rep. 807, note.

Appellee's Brief, Kinsey Thomas, Attorney.

A check is always supposed to be drawn on a previous deposit of funds. Heartt v. Rhodes, 66 Ill. 356; Bailey et al. v. Parridge et al., 134 Ill. 188; 2 Morse on Banks and Banking, Sec. 544; Everett v. Collins, 2 Camp. 515; Porter v. Talcott, 1 Cow. 359.

The drawing of a check without funds to meet it is a fraud. Heartt v. Rhodes, 66 Ill. 351; 2 Parsons on Contracts, 623.

Mr. Justice Pleasants delivered the opinion of the Court.

Appellee brought this action of assumpsit on a check of which the following is a copy:

"Vermont, Ill., June 8, 1892.

J. Mershon & Co., Bankers:

Pay to N. Freeman or bearer five hundred ninety-four 75-100 dollars. J. P. Marshall,

D."

The declaration contained also the common counts, including one on an account stated. The pleas were the general issue and payment. Trial by jury and verdict for plaintiff for $594.75; motion by defendant for new trial; *remittitur* by plaintiff of $267.64, being forty-five per cent of the amount assessed; motion overruled and judgment for residue, $327.11 and costs.

The facts confessedly shown are as follows : Besides the business of farming carried on by appellant near Vermont, he had a flouring mill at that place, which was operated for

him by Mr. Darrah, who was authorized to draw checks in his name on mill account, to be indicated by the word "mill," or by his own name or its initial letter appended to the signature. This was understood by J. Mershon & Co., the bankers. By special arrangement with them, the mill account was kept in the bank in the name of "J. P. Marshall—mill," entirely separate and distinct from his general account.

The check in question was given by Darrah for wheat bought of appellee, and delivered by him for the mill. On receiving it he took it to the bank, but finding the doors being closed for the day, did not present it. He went home, about four miles from the town, and did not return nor take any step to collect the check until the 18th, ten days afterward.

On the 15th the bank suspended payment, and on the next day made an assignment for the benefit of its creditors. Appellee has received nothing for or on account of the check. When it was given to him the mill account had been overdrawn $713.60, and so remained. There was, however, a balance to the credit of the other at that time, and continuously until the assignment, sufficient to pay the check in full.

Appellant filed and proved his claim, under the assignment, without regard to the check, and there was some evidence tending to show that the assets would pay from fifty to sixty per cent of the liabilities, which was not contradicted.

We see nothing in the record which would modify the legal effect of the facts, thus stated upon the judgment below. The question is argued, upon these facts and some other testimony, whether there was any money in the bank subject to the checks, but its decision is deemed unimportant. If appellant was liable at all, he was so, either for the amount of the check or for the proportion that the assets of the bank bore to its liabilities; in other words, to the extent to which he was not damnified by appellee's neglect, if he did neglect, to present the check in apt time. All that the

decision of the question stated could determine, would be the extent of the liability, if any there was, which is already settled, and at the lowest amount, by the *remittitur*. Appellant can ask no more as to that than is thus conceded by the appellee. But it leaves untouched the question of his liability, which remains to be determined by the undisputed facts and evidence above mentioned.

Notwithstanding the learned and ingenious argument of counsel we think he is liable, upon principles of law so familiar as to require no citation of authority.

. Through his agent he bought and received appellee's wheat and gave him this check for the price. That it was chargeable to a mill account, kept separate from another, by his arrangement with the bankers, can not be material. Both accounts and all their credits and debits were his, and the obligation to pay this debt was upon him alone, directly and personally.

The giving of his check for its amount did not discharge that obligation. Appellee did not agree that it should. He received it as a means of payment, to be made effectual by its presentment in proper time. That was a matter of interest to himself and of duty to appellant, if he had funds in the bank to meet it. Whatever loss of those funds, not exceeding the amount of the check, that appellant would otherwise sustain through his disregard of that duty, would fall upon him; but no more.

If the evidence left it doubtful, the *remittitur* is a concession by appellee that appellant had funds in the bank to meet it; that appellee failed in his duty as to its presentment, and that by reason of such failure appellant sustained a loss of those funds to the extent of forty-five per cent, but no more

With this concession as to the extent of his loss, appellant is not satisfied. The evidence in relation to it is the judgment or opinion of one of the assignees that the assets of the bank will pay from fifty to sixty per cent of its liabilities, including that to appellant, which, as filed by and allowed to him, embraces what he intended by this check to transfer to appellee.

The nature of the case admitted of no better evidence on this point. The amount that would be realized was necessarily matter of opinion. We are not prepared to hold that appellee can have no right of action until the assets are all converted into money and the exact percentage is thus ascertained. There are assets. Something will certainly be realized from them. Payment to appellant of his proportion is fully secured. In such case no opinion that can now be formed as to its amount would be exactly what will be shown, but any that would be entitled to respect would be as likely to prove favorable to the one party as to the other. Impossibilities are not required of anybody.

Appellant having filed as part of his claim the money intended to be transferred to appellee, is in no position to claim that appellee should have filed it for himself.

The refusal of instructions 8, 9, 10, 10½, 11, 12 and 13 asked by defendant, was justified by the same error in each, namely, that to be entitled to recover in the case therein respectively stated, the plaintiff must show that the defendant sustained no loss by the neglect to present the check for payment in proper time. As between the drawer and holder of a check, we understand the law to be that although the drawer has suffered some loss, less than the amount of the check, by the *laches* of the holder in respect to the time of its presentment, there may be a recovery of the difference between the amount of such loss and that of the check. The drawer is discharged only *pro tanto*. Howes v. Austin, 35 Ill. 396. Upon the entry of the *remittitur* the motion for a new trial was properly overruled, and upon the conceded facts, the judgment was just. For the reasons thus stated it will be affirmed.